2026 IL App (1st) 242196-U

Fourth Division
Filed August 6, 2026

No. 1-24-2196

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | |
|---|---|
| SALLY SZUMLAS, <br><br>     Plaintiff-Appellant, <br><br> v. <br><br> KURT A. MULLER and THE MULLER LAW FIRM, LTD., <br><br>     Defendants-Appellees. | Appeal from the <br> Circuit Court of Cook County <br><br> No. 2023 L 011505 <br><br> The Honorable Daniel J. Kubasiak, <br> Judge, presiding. |

JUSTICE OCASIO delivered the judgment of the court.
Justices Lyle and Quish concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Plaintiff's complaint for legal malpractice should not have been dismissed as untimely where its allegations set out a basis for equitably estopping defendant from asserting the statute of limitations.

¶ 2    Plaintiff, Sally Szumlas, sued defendants, attorney Kurt A. Muller and his eponymous firm, The Muller Firm, Ltd. (whom we refer to collectively as Muller), in 2023 for legal malpractice in connection with a 2009 settlement agreement that ended dissolution proceedings she had initiated against her husband, Tim Szumlas. The trial court granted Muller's motion to dismiss the claim as barred by the two-year statute of limitations. We find that Sally's complaint adequately alleges facts that could justify equitably estopping Muller's assertion of the statute of limitations. We therefore reverse the dismissal of her complaint and remand for further proceedings.

¶ 3                                I.  BACKGROUND

¶ 4        In 2006, Sally, represented by Muller, petitioned to dissolve her marriage to Tim so she could assert her equity rights in four real properties that, for reasons not material to this appeal, were titled to Tim and his parents (Frank and Lorraine)—but not Sally—as joint tenants. She named Tim's parents as third-party respondents. In response, Tim's parents purported to transfer their two-thirds interest in the properties into a trust by executing warranty deeds, a transaction that the dissolution court later described as being "invalid." The parties settled on the eve of trial: in exchange for Sally dismissing the dissolution petition, in April 2009, Tim and his parents executed quitclaim deeds for each property whereby Sally became a joint tenant along with Tim and his parents. The deeds were duly recorded by Muller.

¶ 5        In 2018, after Tim's parents had both died, Tim and Sally, represented by Muller, jointly filed a claim in probate (the Probate Claim) against Tim's father Frank's estate seeking reimbursement for the costs and expenses associated with operating and managing the properties. The estate—which was being represented by George Petrich, the same attorney who had represented Tim's parents during the 2009 settlement—moved to dismiss as to Sally on the ground that the 2009 quitclaim deeds were "ineffective" because they were executed by Tim's parents, not by the family trust. The complaint in this case does not disclose the disposition of the motion, although it was apparently renewed in 2020.

¶ 6        For the next two years, Muller assured Sally that she did not need to worry about the estate's motion. Among other things, he told her that the estate's motion and argument were invalid, that she and Tim were the "rightful owners" of the properties "by operation of law," and that she would prevail on her claim.

¶ 7        According to her complaint in this case, Sally did not know until January 2020 that the quitclaim deeds "were not effective to convey the [p]roperties *** according to recent filings by the Representative of the Estate."

¶ 8        In 2020, on behalf of Tim and Sally, Muller filed suit against the estate and its attorney, Petrich (the Chancery Action). In essence, the complaint in the Chancery Action sought to establish Tim

and Sally's exclusive ownership of the properties and recover more than $100,000 in damages for, among other things, the costs of litigating the dispute since 2018. Meanwhile, Muller continued assuring Sally that the estate and Petrich would be held liable for fraud. As with the Probate Claim, the complaint in this case does not disclose the status of the Chancery Action.

¶ 9 In December 2021, while being deposed in connection with one of the pending cases—which one is not clear—Sally was asked why, at the time of the settlement in 2009, there had not been a title search, a title policy, a written settlement agreement, or a court reporter present to record the settlement. For the first time, she learned that Muller could have taken any of those steps.

¶ 10 Represented by new counsel, in November 2023, Sally initiated the case before us on appeal, suing Muller and his firm for professional negligence. Muller moved to dismiss her claim as barred by the two-year statute of limitations for legal malpractice actions. See 735 ILCS 5/13-214.3(b) (West 2024). Muller argued that Sally had been made aware of his alleged malpractice as early as 2018, which is when the estate first sought to dismiss the Probate Claim, but in any event no later than September 29, 2020, which is when Muller filed the complaint in the Chancery Action on her behalf. In her response, Sally argued that she first learned of Muller's wrongdoing at the December 2021 deposition. She also argued that Muller had fraudulently concealed her cause of action, triggering an extended limitations period (see *id.* § 13-215), and that he should be equitably estopped from asserting the statute of limitations.

¶ 11 The trial court granted the motion to dismiss, finding that Sally had "pled herself out of her claims" by admitting that she learned that the quitclaim deeds were ineffective in January 2020, which should have prompted her to investigate further. Noting that Sally had already filed two amended complaints, the court dismissed with prejudice.

¶ 12 II. ANALYSIS

¶ 13 On appeal, Sally contends that, according to her complaint, she first learned of Muller's possible negligence at the December 2021 deposition, making her complaint timely under the

discovery rule. Alternatively, she argues that Muller fraudulently concealed her cause of action against him or that he should be equitably estopped from asserting the statute of limitations.

¶ 14    A motion to dismiss under section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2024)) admits the legal sufficiency of the complaint but asserts some affirmative matter that defeats the claim. *Goral v. Dart*, 2020 IL 125085, ¶ 27. Among other things, a defendant can move to dismiss on the basis that the action is time-barred. 735 ILCS 5/2-619(a)(5) (West 2024). The motion to dismiss admits the truth of all well-pleaded facts in the complaint and all reasonable inferences that can be drawn therefrom. *Goral*, 2020 IL 125085, ¶ 27. All pleadings, affidavits, and other supporting documents must be read in the light most favorable to the nonmovant. *Caywood v. Gossett*, 382 Ill. App. 3d 124, 129 (2008). "The question on appeal is whether there exists a genuine issue of material fact precluding dismissal, or absent an issue of material fact, whether dismissal is proper as a matter of law." *Golden v. Mullen*, 295 Ill. App. 3d 865, 869 (1st Dist. 1997). Review is *de novo*. *O'Toole v. Chicago Zoological Society*, 2015 IL 118254, ¶ 16.

¶ 15    Under the applicable statute of limitations, a legal malpractice claim must be filed within two years from the time the plaintiff "knew or reasonably should have known of the injury for which damages are sought." 735 ILCS 5/13-214.3(b) (West 2022); *Carlson v. Fish*, 2015 IL App (1st) 140526, ¶ 23; see *Clay v. Kuhl*, 189 Ill. 2d 603, 608 (2000) ("Under the discovery rule, a party's cause of action accrues when the party knows or reasonably should know of an injury and that the injury was wrongfully caused."). A plaintiff should reasonably know of the existence of a claim when he "possesses sufficient information concerning an injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved." *Carlson v. Michael Best & Friedrich*, 2021 IL App (1st) 191961, ¶ 81. "At that point, the burden is on the plaintiff to inquire further as to the existence of a cause of action." *Id.* "There is no requirement that a plaintiff must discover the full extent of his or her injuries before the statute of limitations begins to run." *Hoffman v. Orthopedic Systems, Inc.*, 327 Ill. App. 3d 1004, 1011 (2002).

¶ 16    We start by ascertaining, based on the allegations of the complaint, when Sally's cause of action against Muller accrued. "The statute of limitations for a legal malpractice claim does not

begin to run when the attorney allegedly commits a negligent act but only when the plaintiff realizes an injury as a result of that negligence." *Zweig v. Miller*, 2020 IL App (1st) 191409, ¶ 30. An injury is a loss for which the plaintiff can seek damages. *Id.* That usually requires the plaintiff to have "suffered an adverse judgment, settlement, or dismissal of the underlying action caused by the attorney's alleged negligence." *Id.* The injury may accrue sooner, however, such as "where an attorney's neglect is a direct cause of the legal expense incurred by the plaintiff." (Internal quotation marks omitted.) *Id.*

¶ 17    Here, Sally's complaint alleges that she has been injured by the need to pay "prior and ongoing attorneys' fees and related costs during the litigation and in defense of the settlement executed by Muller and the Muller Firm in 2009." See *Palmros v. Barcelona*, 284 Ill. App. 3d 642, 647 (2d Dist. 1996) ("Attorney fees incurred as a proximate result of a lawyer's malpractice are damages that make a cause of action complete and thus may start the running of the limitations period."). Sally's complaint does not make it clear when, precisely, that injury first occurred. It alleges that the validity of the deeds was first raised in a November 2018 motion filed by Frank's estate in response to the Probate Claim. But it also alleges that Sally did not know that the deeds were (or might be) ineffective until January 2020, which is when Frank's estate filed a motion to dismiss the Probate Claim. In any event, Sally was aware of this injury, at latest, by September 2020, when she filed the Chancery Action because the complaint in that case sought, among other things, damages to compensate for her litigation expenditures associated with Frank's estate's attempt to defeat the Probate Claim. Even assuming she did not yet realize that better legal representation would have insulated the quitclaim deeds against the estate's challenge, she was, at that time, aware of her injury and that it had been caused wrongfully. See *Carlson v. Fish*, 2015 IL App (1st) 140526, ¶ 39. As that was more than two years before she filed the complaint in this case, her suit would be time-barred unless something either tolled or extended the limitations period.

¶ 18    Sally argues that both circumstances are present here. She alleges that, starting in 2018 and continuing until her December 2021 deposition, Muller concealed from her that the entire situation

could have been avoided in 2009 had he represented her more ably in connection with the dissolution settlement. Based on those allegations, Sally contends that Muller fraudulently concealed her malpractice cause of action from her, triggering a five-year limitations period that began running in December 2021. See 735 ILCS 5/13-215 (West 2024). Alternatively, she contends that Muller should be equitably estopped from raising the time-bar because his conduct between 2018 and 2021 was designed to deflect any blame from him, discouraging her from taking any action against him.

¶ 19       We agree with Sally that her complaint adequately alleges facts that, if found to be true at an evidentiary hearing, would defeat Muller's motion to dismiss based on principles of equitable estoppel. In *DeLuna v. Burciaga*, 223 Ill. 2d 49 (2006), the supreme court set out the elements of equitable estoppel:

> "A party claiming estoppel must demonstrate that: (1) the other person misrepresented or concealed material facts; (2) the other person knew at the time he or she made the representations that they were untrue; (3) the party claiming estoppel did not know that the representations were untrue when they were made and when that party decided to act, or not, upon the representations; (4) the other person intended or reasonably expected that the party claiming estoppel would determine whether to act, or not, based upon the representations; (5) the party claiming estoppel reasonably relied upon the representations in good faith to his or her detriment; and (6) the party claiming estoppel would be prejudiced by his or her reliance on the representations if the other person is permitted to deny the truth thereof." *Id.* at 82-83.

Estoppel can be invoked without a showing that the defendant acted with the intent to mislead, deceive, or cause delay. *Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 158 Ill. 2d 240, 252 (1994). "Rather, all that is necessary for invocation of the doctrine of equitable estoppel is that the plaintiff

reasonably rely on the defendant's conduct or representations in forbearing suit." (Internal quotation marks omitted.) *Id.*

¶ 20    The application of equitable estoppel in a legal malpractice case is illustrated by *Jackson Jordan*. There, in 1973, the law firm Leydig, Voit & Mayer, advised Jackson Jordan, Inc., a manufacturer of railroad track maintenance equipment, that a product it was planning to sell did not infringe any existing patents. *Id.* at 243-44. Several years later, Jackson Jordan became aware of a competitor's patent that it might be infringing and consulted with an attorney at Leydig, who opined that the competitor's patent was invalid and that, in any event, Jackson Jordan had two valid defenses to infringement. *Id.* at 244-45. In 1982, the competitor threatened to sue. *Id.* at 245. Acting on Leydig's advice, Jackson Jordan brought a declaratory action against the competitor, but the court ultimately found in 1987 that Jackson Jordan's product infringed the competitor's patent and that the patent was valid. *Id.* at 245-47. Less than a year later, in 1988, Jackson Jordan sued Leydig for legal malpractice, alleging that Leydig had negligently failed to examine and review the competitor's patent when it originally advised Jackson Jordan that its new product did not infringe any existing patents. *Id.* at 247. The circuit court granted summary judgment in favor of Leydig, finding that the then-applicable five-year limitations period had started to run in 1982, when Jackson Jordan had received the threat to sue, making its 1988 malpractice suit untimely. *Id.* at 248.

¶ 21    The supreme court reversed on two grounds. Relevant to this case, the court found that Leydig was equitably estopped from asserting the time bar because it had constantly reassured Jackson Jordan that its product did not infringe and that its competitor's claim lacked merit, which led to Jackson Jordan delaying taking legal action against Leydig. *Id.* at 252. Analogizing the relationship between attorney and client to that between physician and patient, the court reasoned that Jackson Jordan had done no more than rely on its attorney's advice that its position was sound and that the mere assertion of a contrary claim was not itself compelling enough to induce Jackson Jordan to seek a second opinion. *Id.* at 252-53. These "soothing reassurances," the court explained, lulled Jackson Jordan into a false sense of security. *Id.* at 253. The court also noted that it would be "a

strange rule" to hold otherwise, which would require clients to seek second opinions whenever threatened with suit. *Id.*

¶ 22 Here, when taken as true and viewed in the light most favorable to Sally, the allegations of her complaint show that, after learning that Frank's estate was attempting to defeat the Probate Claim by arguing that the 2009 quitclaim deeds were not effective, Muller consistently described the estate's position as either legally unsound or fraudulent, thereby suggesting to Sally not only that she was not at risk of losing legal title to the properties but also that Muller had not failed to do his due diligence at the time the quitclaim deeds were executed. As in *Jackson Jordan*, Sally reasonably relied on her attorney's soothing reassurances until December 2021, when she learned that Muller neglected to take available precautions when representing her during the dissolution settlement. The fact that the estate was taking a contrary position was not, itself, good enough reason for Sally to seek a second opinion from different counsel. See *id.* at 253. Under these circumstances, Muller could be equitably estopped from asserting the statute of limitations against the client who relied on his assurances.

¶ 23 In holding that the trial court erred by granting Muller's section 2-619 motion to dismiss, we do not decide the ultimate merits of Sally's theory of equitable estoppel; we find only that her allegations create a genuine issue of material fact, which precludes dismissal under section 2-619. See *Mitchell v. State Farm Fire & Casualty Co.*, 343 Ill. App. 3d 281, 286 (2003). The appropriate disposition would be to "deny the motion without prejudice to the right to raise the subject matter of the motion by answer." 735 ILCS 5/2-619(c) (West 2024). We therefore reverse the trial court's order granting the motion to dismiss and remand for further proceedings. We express no opinion on the ultimate merits of her equitable estoppel theory or her argument that the five-year statute of limitations governs because her cause of action was fraudulently concealed.

¶ 24 Finally, Muller argues that, even if Sally's claim is not barred by the statute of limitations, it is barred by the corresponding statute of repose, which requires legal malpractice suits to "be commenced [within] 6 years after the date on which the act or omission occurred." 735 ILCS 5/13-214.3(c) (West 2024). As Muller did not move to dismiss based on the statute of repose, we

find that he has forfeited this argument for the purposes of this appeal. See *Landreth v. Raymond P. Fabricius, P.C.*, 2018 IL App (3d) 150760, ¶ 30 (holding that defendant forfeited reliance on two-year statute of limitations by only raising statute of repose as affirmative defense).

¶ 25                                    III.  CONCLUSION

¶ 26        Assuming the truth of the complaint's allegations and viewing them in the light most favorable to Sally, Muller's limitations defense could be subject to equitable estoppel, so the motion to dismiss should have been denied without prejudice to Muller's right to raise the statute of limitations again as a defense. We therefore reverse the judgment dismissing Sally's complaint and remand for further proceedings.

¶ 27        Reversed and remanded.